**William P. JOHNSON, Jr., Plaintiff,**

v.

**COMPUTER TECHNOLOGY
SERVICES, INC., et al.,
Defendants.**

**Civ. A. No. 86–3484.**

United States District Court,
District of Columbia.

June 17, 1987.

Christopher A. Hart, Hart, Carroll & Chavers, Washington, D.C., for plaintiff.

Squire Padgett, Baccus, James & Patrick, Washington, D.C., for defendants.

## MEMORANDUM OPINION
## AND ORDER

THOMAS F. HOGAN, District Judge.

This action is the third in a series of three brought against defendants Computer Technology Services, Inc. ("CTS") and its president, Dr. Daisy G. Wallace. Plaintiff William P. Johnson, Jr. alleges several causes of action for breach of contract, securities fraud, common law fraud, and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982) ("RICO"), based upon the disintegration of his employment relationship with defendants, and upon alleged improprieties in defendants' solicitation and securing of financing. Defendants move to dismiss the securities count and the RICO count for failure to allege essential elements of the causes of action, and have moved to dismiss all fraud allegations pursuant to Fed.R.Civ.P. 9(b) for insufficient specificity. Finally, defendants move to dismiss the state law claims, on the ground that they are "pendent" to federal claims that cannot be maintained. Plaintiff has countered with a motion to bar defendant's motion under Rule 12(g), and has requested attorneys fees.

### BACKGROUND [1]

Dr. Daisy Wallace, president of CTS, approached plaintiff in 1985 to help stave off CTS's imminent financial collapse. Wallace promised, among other things, to give plaintiff 25% of CTS's outstanding equity stock, to employ plaintiff as the "number two" manager for at least two years, to repay any loans plaintiff gave CTS, and to reimburse plaintiff for the cost of relocating from California to Maryland. Complaint ¶ 8. Plaintiff arranged for his sister, Dr. Frankie Brown, and his father, William P. Johnson, Sr., to loan CTS money. Complaint ¶¶ 10–11, 14. Both loans were secured by written promissory notes, on which plaintiff gave his personal guarantee of repayment. Complaint ¶¶ 11, 15, 17. Plaintiff also loaned CTS funds, but received no promissory note in return. Complaint ¶¶ 18, 21. None of these notes or loans have been repaid.[2] Complaint ¶¶ 13, 16, 24. Plaintiff states that defendants have also failed to pay his full salary, relocation costs, other costs and expenses, and that they have failed to repay the loans he made to CTS.

Plaintiff moved to Maryland and began work at CTS, "sav[ing]" Defendant CTS from financial collapse." Complaint ¶ 31. During his employment, he was required to sign as personal guarantor for a loan to CTS. Complaint, ¶¶ 37–39. His tenure at CTS was brief: Dr. Wallace discharged him on June 2, 1986. Complaint ¶ 24. Plaintiff asserts that Dr. Wallace made many misrepresentations to him, concerning CTS's

---

**1.** The facts are drawn from plaintiff's complaint.

**2.** Defendants have repaid $10,933.33 in principal and interest on William P. Johnson, Sr.'s promissory note. This note was for $15,000.00 plus interest at a rate of 14%.

viability and his own tenure, all of which he relied upon in securing his relatives' loans, in relocating to Maryland, and in giving loans and personally guaranteeing others for CTS's benefit. Plaintiff suffered financial injury from all of these actions, and brought this action on December 19, 1986 claiming: Breach of Contract (Count 1); Federal and State Securities Fraud (Count 2); Common–Law Fraud in Obtaining Funds (Count 3); Common–Law Fraud in Obtaining Personal Loan Guarantee (Count 4); and violations of Civil RICO (Count 5). Plaintiff is a party in two earlier actions based on the promissory notes issued to his sister, *Brown, et al. v. Computer Technology Services, Inc.,* Civil Action No. 86–2753, and to his father, *William P. Johnson, Sr., et al. v. Computer Technology Services, Inc.,* Civil Action No. 86–3124. The present action reiterates the allegations as to Dr. Brown and Mr. Johnson, Sr., although neither is a party to this case.[3] Defendants move to dismiss Counts 2 through 5. For the reasons below, the Court denies the motion in part, and grants it in part.

## DISCUSSION

The Court may dismiss a complaint under Fed.R.Civ.P. 12(b)(6) only when it appears beyond doubt that plaintiff can prove "no set of facts in support of his claims that would entitle him to relief in this court." *Doe v. United States Department of Justice,* 753 F.2d 1092, 1102 (D.C.Cir. 1985). In its review of the complaint, the Court must construe the complaint in the light most favorable to plaintiff, and accept as true all reasonable inferences drawn from well-pleaded factual allegations. *Id.* Plaintiff's complaint need contain only a "short and plain statement" of his claims that will put defendants on notice of his claims and the grounds upon which they rest. *E.g., Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir.1983).

### A. *Count 2: Federal and State Securities Fraud*

In order to state a cause of action for fraud under federal and state securities law, plaintiff must allege that defendants made a material misrepresentation in connection with his purchase or sale of a security. Securities Exchange Act of 1934 ("Act"), 15 U.S.C. § 78j(b); Maryland Securities Act, Md.Corp. & Assoc.Code Ann. § 11–301; Cal.Corp.Code, §§ 25401, 25501. Defendants contend that plaintiff has failed to refer to any "purchase or sale of security." Plaintiff asserts that the loans he made directly to defendants for the payment of expenses are "notes" within the protective reach of the Act. The Act does include promissory notes within its definition of a "security."[4] 15 U.S.C. § 78c(a)(10). Plaintiff's claim has other deficiencies, however, which place his transactions with defendants, as alleged, beyond the Act's reach.

In this jurisdiction, a note is a "security" under the Act only if it represents a "genuine investment," as determined by the criteria set forth by the Supreme Court. *E.g., Baurer v. Planning Group, Inc.,* 669 F.2d 770, 777–78 (D.C.Cir.1981). This analysis turns on "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *SEC v. W.J. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946). The determinative element is "the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *United Housing Foundation v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975). The Court thus must examine the investment characteristics of the transaction to determine whether it comes within the Act. The absence of any written instrument memorializing the transaction, while not fatal to plaintiff's security claim, requires the Court to review the complaint for the necessary investment indicia. *Accord Canadian Imperial Bank of Commerce v. Fingland,* 615 F.2d 465, 466–67 (7th Cir. 1980) (in absence of physical document, court examines complaint for investment attributes of transaction). Unless plaintiff has sufficiently described a "security," subject matter jurisdiction is lacking. *Id.* at 467.

■ Examination of the complaint reveals that in return for his loans, plaintiff

---

3. Plaintiff has moved to consolidate the three actions, and defendants do not oppose. The Court addresses this motion separately.

4. Notes may also qualify as a "security" under the Maryland and California statutes. *See* Md. Corp. & Assoc.Code Ann. § 11–101(*o* ); Cal. Corp.Code § 25019.

expected, among other things, to be employed "in the number two managerial position at Defendant CTS." Complaint ¶ 8. He began working at CTS in January, 1986, shortly after he made his first loan to CTS, and made further loans throughout his employment. Complaint ¶ 18. As the number two manager, plaintiff "saved Defendant CTS from financial collapse," as he had been hired to do. Complaint ¶¶ 6, 24. Any profits he expected from the loan transaction thus were to come in part from his own efforts. In this Circuit, to establish the investment indicia of a security, the anticipated profits need not be expected to come solely from the efforts of others, so long as the efforts by others are "the undeniably significant ones, ... affect[ing] the failure or success of the enterprise." *Baurer*, 669 F.2d at 779. Reviewing the facts as alleged by plaintiff under this standard the only reasonable inference is that plaintiff's efforts were at least as significant and essential as the efforts of others. The loans plaintiff relies upon to support his securities' claim do not—on the face of the complaint—constitute securities.[5]

■ Plaintiff also refers to two promissory notes CTS issued to his father and sister in support of this cause of action. Assuming that these notes would be "securities" under the Act, plaintiff neither "purchased" nor "sold" them, and they cannot support his claim of fraud under securities laws. Thus, as plaintiff has failed to allege the existence of a "security" that he purchased or sold, he has stated no claim for fraud under the securities acts. Defendants' motion to dismiss Count 2 shall be granted.

### B. *Count 5: RICO Claims*

Under § 1962 of RICO, plaintiff must allege a "pattern of racketeering activity" to state a claim.[6] To establish this element, plaintiff must allege at least two predicate acts of "racketeering activity." Plaintiff bases his RICO claim on "fraudulent communications by mail, in violation of 18 U.S.C. Section 1341; fraudulent communications by wire, in violation of 18 U.S.C. Section 1343; and fraud in the sale of securities, in violation of 15 U.S.C. Section 78j," all of which are within the statutory definition of racketeering activity. 18 U.S.C. § 1961(1)(B); Complaint ¶ 47. The securities fraud claim is based on the promissory note promised to plaintiff, and the notes given to his father and sister. No facts are alleged describing or supporting the mail fraud or wire fraud. Defendants move to dismiss the RICO count for failure to sufficiently plead the elements of the predicate acts. Defendants further contend that the allegations do not meet the requirement of Fed.R.Civ.P. 9(b) to plead fraud with specificity.

■ The essential elements of federal mail and wire fraud are "(1) a scheme to defraud, and (2) use of the mails or wires for the purpose of executing the scheme." *United States v. Alston*, 609 F.2d 531, 536 (D.C.Cir.1979). Fed.R.Civ.P. 9(b) governs the manner in which plaintiff must present these elements, and requires that "the circumstances constituting fraud ... be stated with particularity" in the complaint.[7] The "circumstances" of mail and wire fraud include, at a minimum, the "time, place and contents of [the] false representations." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982), *aff'd on reh'g*, 710 F.2d

---

**5.** This analysis also disposes of plaintiff's securities claims under state law, as the Maryland and federal definition of "security" are identical, *O'Neil v. Marriott Corp.*, 538 F.Supp. 1026, 1032 (D.Md.1982). Reliance on the managerial efforts of others is similarly a key element of California's "risk capital" test, used to define "security." *E.g., Leyva v. Superior Court (Orange Coast Title Co.)*, 164 Cal.App.3d 426, 470–72, 210 Cal.Rptr. 545, 549–50 (1985).

**6.** Plaintiff alleges violations of RICO § 1962(b)–(d), which provide:
(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which

is engaged in, or the activities of which affect, interstate or foreign commerce.
(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

**7.** Fed.R.Civ.P. 9(b) provides in relevant part:
In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

1361 (8th Cir.1983). Failure to provide the necessary circumstances may warrant dismissal of the claims they support, with prejudice. *Id.* at 1062. Plaintiff has not alleged a single fact to show the circumstances of the mail and wire use, or of the purposefully fraudulent [8]—rather than incidental—use of the mails or wires.[9] Accordingly, defendants' motion to dismiss the RICO count shall be granted, as the allegations of racketeering activity are unsupported and insufficient.

### C. *Counts 3 and 4: Common-Law Fraud*

■ Plaintiff alleges common-law fraud in obtaining funds in Count 3, based on the same series of promissory note transactions underlying the securities fraud claims. In Count 4, plaintiff alleges common-law fraud based on a personal loan guarantee defendants obtained from him for a $150,000 line of credit. Defendants move to dismiss these counts, with prejudice, contending they lack the specificity Rule 9(b) requires. The Court is concerned with the lack of specific detail in the Counts. Plaintiff has not alleged the time, place and contents of the representations made in Count 3, and to a lesser degree, in Count 4. Although the circumstances of the representations could be inferred from the facts set forth in Count 4, Rule 9(b) demands explicit rather than implicit averment of facts. In both Counts, however, plaintiff has set forth the necessary elements of a fraud claim, within the meaning

of Fed.R.Civ.P. 8. Dismissal under Rule 12(b)(6) for failure to state a claim is thus not proper. Plaintiff shall, however, amend his complaint to supply the necessary detail.

### D. *Pendent Jurisdiction Over State Claims*

■ Defendants, having secured the dismissal of plaintiff's federal claims, contend that the pendent state law claims should be dismissed. Although plaintiff invoked this Court's jurisdiction under 28 U.S.C. § 1331, in connection with his federal securities and RICO claims, the complaint reveals assertions of diversity among the parties and more than $10,000.00 in controversy. This Court will exercise jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1332.[10]

### E. *Piecemeal Defenses and Plaintiff's Request for Sanctions*

■ Plaintiff has raised Fed.R.Civ.P. 12(g), arguing that because defendants did not move to dismiss the companion cases, the present motion should be barred.[11] He also seeks attorneys fees incurred in responding to this motion, presumably as a Rule 11 sanction. Both assertions are meritless. As plaintiff elected to file three separate actions, he is the author of his own misfortune. He cannot now complain of the hardship involved in litigating each action separately under the Rules. The Court will deny both requests.

---

**8.** Fraudulent intent need only be pleaded generally. Fed.R.Civ.P. 9(b). Although plaintiff averred that defendants purposefully defrauded him, in connection with the securities count, he fails to even generally allege the intentional fraudulent use of wires or mails, a necessary element of the criminal act.

**9.** Although the Federal Rules of Civil Procedure adopt a liberal policy of amendment to pleadings, *see* Fed.R.Civ.P. 15(a), in this case plaintiff has asserted that his complaint is sufficient as it stands. The Court accordingly has reviewed the complaint as filed, based upon the averment of counsel that "it is warranted by ... law" and that the facts, as investigated and known by counsel, are sufficient to support the claim and are stated in the complaint. *See* Fed.R.Civ.P. 11.

**10.** The Court is concerned that examination of the facts may undermine the basis for diversity jurisdiction, particularly in connection with the

claims regarding William P. Johnson, Sr. As the complaint is facially sufficient, however, and as the parties have not addressed the issue, the Court does not express an opinion at this time as to the existence of § 1332 jurisdiction.

**11.** Fed.R.Civ.P. 12(g) provides:

(g) **Consolidation of Defenses in Motion.** A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

Nothing in this Rule requires defenses available in separate but related actions to be included in the same motion.

In accordance with the above conclusions, it is this 17th day of June, 1987,

ORDERED that

1) defendants' motion to dismiss Count 2 and Count 5 is granted, and both Counts are dismissed with prejudice. The motion is otherwise denied;

2) plaintiff's motion to bar under Fed.R. Civ.P. 12(g) and his request for attorneys fees are denied; and

3) plaintiff shall amend Counts 3 and 4 within 15 days of the date of this order.