Harold **MENOWITZ**, Stanton Spritzler and Harry Drooker on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

David F. **BROWN**; Robert F. Ehrling; Gerard P. Mozian; Joseph P. Zdon; George T. Scharffenberger; Marshall Manley; Edwin I. Hatch; Eben W. Pyne; Charles J. Simons; Reuben O'D. Askew; Peter R. Brinckerhoff; Howard L. Clark; KPMG Peat Marwick; PaineWebber, Inc.; Merrill Lynch Capital Markets and Merrill, Lynch, Pierce, Fenner & Smith Inc., Defendants–Appellees.

Nos. 1023, 1024, Dockets 92–7867, 92–9149.

United States Court of Appeals, Second Circuit.

Argued Jan. 21, 1993.

Decided March 29, 1993.

Bruce E. Gerstein, New York City (Scott W. Fisher, Barry S. Taus, Garwin, Bronzaft, Gerstein & Fisher, New York City, John P. Zuccarini, Elwood S. Simon, Elwood S. Simon & Assoc., P.C., Bloomfield Hills, MI, Mordecai Rosenfeld, Mordecai Rosenfeld, P.C., New York City, David Pastor, Kenneth Gilman, Gilman & Pastor, Boston, MA, Gary Fields, Siegel & Lipman, Boca Raton, FL, of counsel), for plaintiffs-appellants.

Lewis N. Brown, Miami, FL (Linda H. Gottlieb, Gilbride, Heller & Brown, P.A., Miami, FL, Leonard P. Novello, John A. Shutkin, KPMG Peat Marwick, New York City, of counsel), for defendant-appellee KPMG Peat Marwick.

Robert T. Wright, Jr., Miami, FL (Carlos M. Sires, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, FL, of counsel), for defendants-appellees O'D. Askew, George T. Scharffenberger, Eben W. Pyne, Edwin

I. Hatch, Howard L. Clark, Jr., Marshall Manley, Peter R. Brinckerhoff and Charles J. Simons.

Steven M. Edwards, New York City (Ellen Wahl Parker, Davis, Markel & Edwards, of counsel), for defendant-appellee David F. Brown.

Joel Hirschhorn, Coral Gables, FL (Robert M. Einhorn, Joel Hirschhorn, P.A., Coral Gables, FL, of counsel), for defendant-appellee Robert F. Ehrling.

James D. Wing, Miami, FL (Alice Lash, Fine Jacobson Schwartz Nash Block & England, Miami, FL, of counsel), for defendant-appellee Gerard P. Mozian.

Ronald B. Ravikoff, Miami, FL (Frederick Sall, Zuckerman, Spaeder, Taylor & Evans, Miami, FL, of counsel), for defendant-appellee Joseph P. Zdon.

James J. Hagan, New York City (Bruce D. Angiolillo, Joseph McLaughlin, Simpson, Thacher & Bartlett, of counsel), for defendants-appellees PaineWebber, Inc., Merrill Lynch Pierce Fenner & Smith and Merrill Lynch Capital Markets.

Before: PIERCE, WALKER, Circuit Judges, and CONBOY, District Judge.*

PER CURIAM:

Plaintiffs-appellants in these three actions (*"Menowitz," "Spritzler"* and *"Drooker"*), consolidated in the Southern District of New York before Judge McKenna, assert federal claims under Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o, Sections 10(b) and 20 of the Securities Exchange Act of 1934, *id.* §§ 78j(b) and 78t(a), and Rule 10b–5 promulgated pursuant to § 10(b), 17 C.F.R. § 240.10b–5, as well as supplemental state law claims. Plaintiffs appeal the district court's judgments dismissing their complaints.

Plaintiffs purchased registered subordinated debentures issued by the General Development Corp. ("GDC") in April, 1988. Defendants-appellees are former directors and officers of GDC, underwriters of the debentures, and GDC's certified public accountants. GDC is a real estate developer which is in the business of selling home-sites and other properties in Florida. GDC also provides financing for purchasers of its properties through a subsidiary, GDV Financial Corporation ("GDV"). Now in bankruptcy, GDC is not a party to these actions.

Plaintiffs allege that they were induced to purchase the debentures by fraudulent misrepresentations largely contained in a prospectus and various other SEC-mandated disclosure statements, including a 1988 10–K report and several 1989 10–Q reports. The documents allegedly: (1) misrepresented GDC's financial condition by not disclosing that past profits resulted from illegal real estate sales practices; (2) failed to disclose that claims asserted by disgruntled GDC customers in various then pending civil actions were meritorious and fraudulently represented that, despite then ongoing government investigations, there was no basis for criminal charges against GDC; and (3) failed to disclose the extent of GDC's duties to refund payments due to defaulting purchasers of GDC properties and monies owed by GDC due to GDC's failure to complete certain development projects.

Defendants moved to dismiss the complaints, pursuant to Fed.R.Civ.P. 12 and 9(b), under various theories, including that plaintiffs failed to allege actionable misrepresentations, and failed to plead fraud with particularity, and that plaintiffs' claims were time-barred. The district court dismissed all three complaints as time-barred. *See In re Gen. Dev. Bond Litig.,* 800 F.Supp. 1128, 1143 (S.D.N.Y.1992) (*"Gen. Dev. I"*); *In re Gen. Dev. Bond Litig.,* 800 F.Supp. 1143, 1148 (S.D.N.Y.1992) (*"Gen. Dev. II"*). Judge McKenna determined that, on the facts as pled, plaintiffs were placed on inquiry notice of their federal claims more than one year before they filed their complaints. *See Gen. Dev. I,* 800 F.Supp. at 1136–43.

We address two arguments raised by plaintiffs concerning the statute of limita-

---

* Hon. Kenneth Conboy, Judge, United States District Court for the Southern District of New York, sitting by designation.

tions periods applicable to their § 10(b)/Rule 10b–5 claims, and otherwise affirm the judgments of the court below substantially for the reasons set forth in Judge McKenna's opinions in *Gen. Dev. I* and *Gen. Dev. II.*

## DISCUSSION

The district court looked to federally mandated disclosure documents containing disclosures of numerous civil actions, as well as criminal and civil government investigations, concerning GDC's and GDV's alleged fraudulent activities. *See Gen. Dev. I,* 800 F.Supp. at 1136; *see also Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991) (courts may look to federally mandated disclosure documents in ruling upon Fed.R.Civ.P. 12(b)(6) motions). The district court determined that those documents placed plaintiffs on inquiry notice of the probable existence of their claims more than one year before they filed their complaints. *See Gen. Dev. I,* 800 F.Supp. at 1141–43. Applying the one-year/three-year statute of limitations period applicable to actions under §§ 9(e) and 18(a) of the 1934 Act, which requires that an action be brought "within one year after the discovery of the facts constituting the violation and within three years after such violation," 15 U.S.C. § 78i(e) (§ 9(e)); *see also id.* § 78r(c) (§ 18(c)), the district court held that plaintiffs' § 10(b)/Rule 10b–5 claims were time-barred. *See Gen. Dev. II,* 800 F.Supp. at 1148; *Gen. Dev. I,* 800 F.Supp. at 1143.

These actions were filed during January and March, 1991, and were pending when the Supreme Court decided *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), which applied § 9 to establish a uniform statute of limitations period for § 10(b)/Rule 10b–5 claims. *See id.* —— U.S. at ——, 111 S.Ct. at 2782 n. 9; *see also James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, ——, 111 S.Ct. 2439, 2448,

115 L.Ed.2d 481 (1991) (Souter, J., announcing judgment of Court; joined by Stevens, J.) (new construction of civil statute applied to litigants before court must be applied retroactively to other pending cases); *Henley v. Slone,* 961 F.2d 23, 24–25 (2d Cir. 1992) (under rule of *Beam,* statute of limitations announced in *Lampf* applicable to the cases pending when *Lampf* was decided). The recently enacted § 27A of the 1934 Act applies in part to § 10(b)/Rule 10b–5 actions pending when *Lampf* was decided, and directs application of "the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991" to such actions. 15 U.S.C. § 78aa–1.[1]

The *Menowitz* and *Spritzler* actions were filed in the Southern District of New York shortly after we decided *Ceres Partners v. GEL Assoc.,* 918 F.2d 349 (2d Cir. 1990), which adopted the one-year/three-year limitations period for the Second Circuit, later made applicable to the entire country by the Supreme Court in *Lampf.* As we recently held in *Walsche v. First Investors Corp.,* 981 F.2d 649 (2d Cir.1992), under § 27A, the one-year/three-year 1934 Act statute of limitations applies to all claims filed in the Second Circuit after *Ceres,* no matter when the claims arose.

The *Drooker* plaintiffs contend that the one-year/three-year limitations period is inapplicable to their claims. Like the *Menowitz* and *Spritzler* actions, the *Drooker* action was filed after *Ceres* was decided. However, unlike the other two consolidated actions, *Drooker* was filed in the Southern District of Florida, and transferred to the Southern District of New York pursuant to 28 U.S.C. § 1407 in August 1991, after *Lampf* was decided. The *Drooker* plaintiffs argue that § 27A directs application of the pre-*Lampf* statute of limitations rule of the transferor Eleventh Circuit (which then borrowed state blue sky limitations

---

1. Section 27A provides, in relevant part:
   (a) Effect on pending causes of action
   The limitation period for any private civil action implied under section 78j(b) of this title that was commenced on or before June

19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
15 U.S.C. § 78aa–1(a).

periods) to their claims, rather than the limitations rule we adopted in *Ceres*. We disagree.

Section 27A requires federal courts to employ the statute of limitations doctrine "applicable in the jurisdiction" before *Lampf* to cases pending when *Lampf* was decided. Upon the § 1407 pre-trial transfer, the *Drooker* action was placed under the jurisdiction of the district court for the Southern District of New York. Thus, the question presented is whether Second Circuit doctrine directs application of the Eleventh Circuit limitations rule to such a transferred action.

■ Resolution of this question turns on whether the choice of the applicable limitations period is properly understood as a matter of state or of federal law. Section 1407 is designed to provide for the "just and efficient conduct" of related cases filed in various federal districts by consolidating them for pre-trial purposes before one court. *See* 28 U.S.C. § 1407(a). We have previously held that a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit. *See Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.)*, 950 F.2d 839, 847 (2d Cir.1991) (concerning transfer motion pursuant to 28 U.S.C. § 157(b)(5)); *accord In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175–76 (D.C.Cir.1987) (concerning actions transferred pursuant to 28 U.S.C. § 1407), *aff'd sub nom. on other grounds, Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). By contrast, under the rule of *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed.

*Van Dusen's* construction of § 1407 rests upon *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, which require a federal court ruling upon questions of state law to apply the same state substantive law, including choice-of-law rules, that would have been applied by a state court in the

jurisdiction in which a case was filed. *See also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). *Van Dusen* furthers *Erie's* policies by insuring that a pre-trial transfer under § 1407 does not lead to the application of a state substantive law that differs from the law applicable in the jurisdiction where the case was properly filed. As the Court stated: "the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed." *Van Dusen*, 376 U.S. at 638, 84 S.Ct. at 820.

■ Although federal courts sometimes arrive at different constructions of federal law, federal law (unlike state law) is supposed to be unitary. Thus, the rule of *Van Dusen* does not apply by analogy where a case is transferred under § 1407 to a federal court that has a different construction of relevant federal law than the federal court in which the action was filed. " '[F]ederal courts comprise a single system applying a single body of law, and no litigant has a right to have the interpretation of one federal court rather than that of another determine his case.' " *Coker*, 950 F.2d at 847 (quoting *H.L. Green Co. v. MacMahon*, 312 F.2d 650, 652 (2d Cir.1962), *cert. denied*, 372 U.S. 928, 83 S.Ct. 876, 9 L.Ed.2d 736 (1963)); *see also In re Pittsburgh & Lake Erie R.R. Co. Sec. & Antitrust Litig.*, 543 F.2d 1058, 1065 n. 19 (3d Cir.1976) ("federal law, in its area of competence, is assumed to be nationally uniform, whether or not it is in fact"). Applying *Van Dusen* by analogy to issues of federal law also runs contrary to the principle that, until the Supreme Court speaks, the federal circuit courts are under duties to arrive at their own determinations of the merits of federal questions presented to them; " '[i]f a federal court simply accepts the interpretation of another circuit without [independently] addressing the merits, it is not doing its job.' " *In re Korean Air Lines Disaster*, 829 F.2d at 1175 (quoting R.L. Marcus, *Conflict Among Circuits and Transfers Within the Federal Judi-*

*cial System,* 93 Yale L.J. 677, 702 (1984)). Our construction of the pre-trial transfer statute also serves the goals of administrative efficiency underlying § 1407. It would be unwieldy, if not impossible, for a court to apply differing rules of federal law to various related cases consolidated before it. *See id.* at 1174–76 (D.H. Ginsburg, J., concurring); *see also In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.,* 815 F.Supp. 620 (S.D.N.Y.1993).

▮ Whether or not courts apply a state limitations period to a federal claim, "the choice of a limitations period for a federal cause of action is itself a question of federal law." *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 159 n. 13, 103 S.Ct. 2281, 2289 n. 13, 76 L.Ed.2d 476 (1983) (citation omitted). Where a federal statute lacks an explicit statute of limitations, federal courts may apply limitations periods provided by analogous state laws (as we did in § 10(b)/Rule 10b–5 actions prior to *Ceres*), may select a federal limitations period (as we did in *Ceres*), or may choose not to apply a limitations period at all, *see Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385, 1393–95 (7th Cir.1990) (Posner, J., concurring), *cert. denied,* —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991). Whatever choice the federal courts make, it is designed to further the policies underlying the federal statute at issue. As the *DelCostello* Court stated:

> "the court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies."

462 U.S. at 161, 103 S.Ct. at 2289 (quoting *Occidental Life Ins. Co. v. Equal Employment Opportunity Comm'n,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977)). Once a state limitations period is borrowed and applied to a federal cause of action, the borrowed limitations period is no longer an element of state law. Or, as Judge McKenna put it, the borrowed period is "derived from state law, but ultimately integral to the federal cause of action whose temporal parameters it . . . has been chosen to circumscribe." *Gen. Dev. II,* 800 F.Supp. at 1148. Given that the choice of the statute of limitations period applicable to § 10(b)/Rule 10b–5 claims is a matter of federal law, the statute of limitations doctrine of the transferee Second Circuit applies to the *Drooker* plaintiffs' claims.

The *Drooker* plaintiffs point to two Second Circuit cases stating that state law limitations statutes borrowed by a transferor circuit should apply in a transferee circuit. *See Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 406 (2d Cir.1975); *H.L. Green Co.,* 312 F.2d at 653 (dictum); *see also In re Plumbing Fixtures Litig.,* 342 F.Supp. 756, 758 (J.P.M.L.1972) (per curiam) (dictum withdrawn by *In re Gen. Motors Class E. Stock Buyout Sec. Litig.,* 696 F.Supp. 1546, 1547 n. 1 (J.P.M.L.1988) (per curiam)). As noted by the court below, however, these cases are of limited precedential value because they pre-date *DelCostello*'s holding that borrowed state limitations periods are incorporated into federal law. *See Gen. Dev. II,* 800 F.Supp. at 1147–48.

▮ Plaintiffs in all three actions argue that the one-year prong of the one-year/ three-year statute of limitations adopted in *Ceres* begins to run only upon actual notice, and not upon inquiry notice. We disagree. The 1934 Act limitations period adopted in *Ceres,* and later adopted in *Lampf,* requires that claims be brought within one year of discovery of the facts giving rise to the violation. *See* 15 U.S.C. § 78i(e); *see also id.* § 78r(c). We have previously stated that "discovery" under the 1934 Act limitation provisions includes constructive or inquiry notice, as well as actual notice. *See, e.g., Kahn v. Kohlberg, Kravis, Roberts & Co.,* 970 F.2d 1030, 1042 (2d Cir.) (construing both 1933 and 1934 Act limitations provisions; "[d]iscovery takes place when the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the

exercise of reasonable diligence, would have led to actual knowledge"), *cert. denied,* —— U.S. ——, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992); *see also Henley,* 961 F.2d at 24 (*Ceres* adopted "uniform limitations period of the earlier of one year from the date the fraud was or reasonably should have been discovered or three years from the date of the transaction"); *Mirman v. Berk & Michaels, P.C.,* No. 91 CIV. 8606, 1992 WL 332238 (S.D.N.Y. Oct. 30, 1992) ("lack of actual notice of the possibility of fraud ... is not the required standard"). We see no reason to depart from our prior constructions of the 1934 Act.

In this case, plaintiffs were placed on inquiry notice of their claims by the very SEC-mandated disclosure documents they rely upon in their complaints. Released in 1988 and 1989, the documents disclosed numerous lawsuits against GDC, GDV and certain of the companies' officers, as well as civil and criminal investigations. The lawsuits and investigations, disclosed in the prospectus and other reports, concerned, *inter alia,* alleged breaches of real property installment sales contracts, alleged improper appraisal practices, alleged improper business and marketing practices, and alleged federal and state securities law violations. The gravity of the allegations was supported by the sheer volume of claims disclosed in the documents. For example, a 1989 10–Q report disclosed the pendency of over 80 suits, with thousands of claimants, concerning allegedly improper and fraudulent GDC sales practices. Judge McKenna properly determined that the numerous disclosures specifically concerned the very misrepresentations alleged in the complaints, and thus placed plaintiffs on inquiry notice of probable fraud more than one year before they filed their claims in 1991.

## CONCLUSION

The judgments of the district court are affirmed.